**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2280
_____

KAREEM HASSAN MILLHOUSE,
                                        Appellant
v.

B.A. BLEDSOE

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. Action No. 10-cv-01974)
District Judge:  Honorable Sylvia H. Rambo

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 12, 2012
Before:  RENDELL, FUENTES and WEIS, Circuit Judges
Opinion filed: January 20, 2012
_____

OPINION
_____

PER CURIAM.

        Pro se appellant Kareem Milhouse appeals from the District Court's April 8, 2011

order denying his petition for a writ of habeas corpus under 28 U.S.C. § 2241.  For the

following reasons, we will affirm.

1

I.

Milhouse[1] is a federal prisoner incarcerated at USP Lewisburg. On May 14, 2009, at 11:38 a.m., the Lieutenant of the prison's Special Management Unit ("SMU") entered Milhouse's cell and ordered him to submit to hand restraints so that he could be moved to another cell. When Milhouse refused to comply, a Use of Force team entered the cell to remove him. Upon Milhouse's continued refusal to comply, the team "deployed less than lethal foam baton munitions" and Milhouse was eventually placed in ambulatory restraints and removed from his cell.

An Incident Report ("Report") was delivered to Milhouse the following day at noon. He was charged with Refusing a Program Assignment, Refusing an Order, and Threatening Staff[2] in violation of several sections of the Bureau of Prisons' ("BOP") disciplinary code. An investigation was conducted on May 18th, and the investigating officer noted that the investigation had not occurred within 24 hours of the incident due to the lack of qualified staff working over the weekend. On May 20, 2009, the Unit Disciplinary Committee ("UDC") reviewed the Report and referred the charge to the DHO. At that time, Milhouse was notified of his rights at the disciplinary hearing, which

_____

[1] Because the Appellant refers to himself as "Milhouse" rather than "Millhouse" (as his name is spelled in the case caption), we will do the same.

[2] The Government notes that this charge was not sustained, as the Disciplinary Hearing Officer ("DHO") determined that the officers had erroneously attributed threatening statements to Milhouse rather than to another inmate who was also being removed from his cell.

2

include having a staff member represent him and calling witnesses. Milhouse requested that Lieutenant Fosnot act as his staff representative and listed two staff members as witnesses. In making these requests, Milhouse focused on proving that he did not threaten staff members and that he did not receive the Report within 24 hours of the incident occurring. He requested only that Lieutenant Fosnot review video footage to prove that that the investigating officer did not deliver the Report to him and to prove that he did not make any threatening statements. He believed that the witnesses (both staff members) would also establish that he did not threaten staff members.

Milhouse's DHO hearing began on June 23, 2009. He claimed that he did not receive the Report within 24 hours of the incident occurring, and asked that it be expunged. He also asserted that he did not make threatening statements, but admitted that he had refused to obey the order to submit to hand restraints and change cells. The DHO declined to expunge the Report because the record reflected that Milhouse had received the report at 12:00 p.m. on May 15, 2009, and because he acknowledged receiving written notice of the charge more than 24 hours before the DHO hearing. The hearing was continued to allow the DHO and Lieutenant Fosnot to review the videotape of the incident. The hearing resumed on July 7, 2009, at which point Milhouse was found to have committed the prohibited act of refusing an order in violation of Code 307. He was sanctioned to 15 days of disciplinary segregation as well as the loss of: (a) 14 days good conduct time, (b) 120 days of commissary privileges, and (c) 120 days of visiting privileges.

3

In 2010, Milhouse filed a 28 U.S.C. § 2241 petition alleging that his constitutional rights were violated in the disciplinary proceedings which resulted in the loss of good conduct time. He asserted that he should not have been removed from his cell because he was no longer on a hunger strike and that the evidence was insufficient to sustain the charge of refusing to obey a staff order because the order was improper. He also claimed that his procedural rights were violated because he did not receive the Report within 24 hours of the incident's occurrence. The District Court denied Milhouse's petition on April 8, 2011.

Milhouse now appeals.

II.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). We exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to its findings of fact. Cradle v. United States, 290 F.3d 536, 538 (3d Cir. 2002). A complaint challenging the loss of good time credits is cognizable under 28 U.S.C. § 2241. Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008).

"[A] prisoner has a constitutionally protected liberty interest in good time credit." Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). Thus, a prisoner facing the loss of good-conduct time as a result of an infraction is entitled to certain procedural protections in the disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974). The minimum required protections are: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional

4

goals, to call witnesses and present documentary in [the inmate's] defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendant v. Hill, 472 U.S. 445, 454 (1985). Additionally, the DHO's findings must be supported by some evidence in the record. See id. at 455. This standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.

Milhouse maintains that there was insufficient evidence for the disciplinary charge of Refusing an Order. In particular, he asserts that he never should have been subject to the order because he had already ended the hunger strike that was apparently the impetus for the forced cell change. However, the District Court properly declined to consider this argument because Milhouse did not raise it before the DHO. See McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999). Further, for the reasons given by the District Court, the DHO's decision that Milhouse committed the Code 307 violation meets the "some evidence" standard. See Hill, 472 F.3d at 455-56.

Milhouse also reiterates his claim that his rights were violated because he did not receive notice of the charges within 24 hours after the incident occurred. As the District Court explained, under the then-applicable regulations, the prison staff was to "give each inmate charged with violating a Bureau rule a written copy of the charge(s) . . . ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the

5

incident." 28 C.F.R. § 541.15(a). Inmates are also to receive "advance written notice of the charges . . . no less than 24 hours before the inmate's appearance before the [DHO]." 28 C.F.R. § 541.17(a). See also Young, 926 F.2d at 1399 (stating that a prisoner "must receive written notice of claimed violations at least 24 hours in advance of the hearing"). We discern no error in the District Court's conclusion that Milhouse received the Report and notice of the charge in accordance with the regulations. Additionally, we note that even if the regulation had been violated, its violation is not actionable in this case. Milhouse cannot show that his right to due process was violated by a technical non-compliance with a regulation where any delay did not prejudice him. See Wilson v. Ashcroft, 350 F.3d 377, 380-81 (3d Cir. 2003). Also, Milhouse has not shown that the regulation itself created a liberty or property interest such that its alleged violation abridged his due process rights See Sandin v. Conner, 515 U.S. 472, 487 (1995).

Milhouse's remaining arguments are meritless. Accordingly, we will affirm the District Court's denial of his 28 U.S.C. § 2241 petition.